## A98A1704. ADORNO v. THE STATE.
### (512 SE2d 703)

RUFFIN, Judge.

A jury found Orlando Adorno guilty of trafficking in cocaine. Adorno appeals, asserting that the evidence was not sufficient to sustain the jury's verdict. In addition, Adorno contends that the trial court erred in failing to give his requested jury charge on a lesser included offense; in denying his motion for mistrial following improper juror contact by a bailiff; and in denying his motion for severance. For reasons which follow, we affirm.

1. In his first enumeration of error, Adorno challenges the sufficiency of the evidence. "On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." (Punctuation omitted.) *Kelley v. State,*

233 Ga. App. 244 (503 SE2d 881) (1998).

So viewed, the evidence establishes that on December 5, 1996, the DeKalb County Narcotics Division set up a drug deal through a confidential informant. A surveillance team went to the house where the suspected dealers lived to wait for one of the suspects to leave the house with the drugs. A woman named Rodriguez left the house driving a black Honda Prelude. When Rodriguez failed to stop at a stop sign, she was pulled over and was arrested for driving with a suspended license. After the officer arrested Rodriguez, a female officer found the cocaine she had concealed in her bra.

As soon as the police had taken the drugs from Rodriguez, another detective went to a judge to obtain a search warrant for the house Rodriguez had just left. While waiting for the officer to return with the search warrant, two other police officers waiting outside the house saw Adorno come out of the back door carrying several plastic grocery bags: After the officers identified themselves, Adorno began running. One of the officers chased Adorno down a ravine and tackled him. Several officers testified that as Adorno fell, a bag of cocaine and bundles of cash spilled out of the plastic bags. A forensic chemist testified that the cocaine was divided into three samples weighing 849.9 grams, 530 grams and 59 grams. Two tests were performed on the 849.9 gram sample, revealing that it was 88 percent pure cocaine. According to one of the officers, the money recovered from Adorno amounted to "a little less than $55,000."

A person is guilty of trafficking in cocaine when he is knowingly in possession of twenty-eight grams or more of cocaine or any mixture with a purity of ten percent or more of cocaine. OCGA § 16-13-31 (a) (1). If the quantity of cocaine or the mixture involved is 400 grams or more, the person shall be sentenced to a minimum sentence of 25 years and shall pay a fine of $1 million. OCGA § 16-13-31 (a) (1) (c). In light of the evidence presented that Adorno was caught with at least 849.9 grams of cocaine with a purity of 88 percent, the jury was authorized to conclude that he was trafficking in cocaine. See *Milton v. State*, 232 Ga. App. 672, 673 (1) (503 SE2d 566) (1998).

Adorno argues that the evidence is insufficient to sustain his conviction for trafficking because the expert witness from the crime lab admittedly did not test the entire 849.9 gram sample of cocaine for purity. However, a similar argument was made and rejected in *Covington v. State*, 226 Ga. App. 484 (486 SE2d 706) (1997), in which the defendant challenged his trafficking conviction based upon the fact that the expert witness did not test the entire sample, but rather tested representative pieces in reaching his conclusion that the cocaine was 32 percent pure. This Court concluded that the evidence was sufficient to convict for trafficking. Id. at 485 (2). Likewise, in this case, the chemist "took a little . . . from several of the pieces [of

cocaine] and mixed them together" before testing for purity. Furthermore, the expert testified that she tested enough of the individual pieces of cocaine to add up to 400 grams. Thus, as in *Covington*, we find the evidence sufficient to sustain Adorno's conviction.

2. Adorno asserts that the trial court erred in failing to grant a mistrial after a deputy sheriff improperly communicated with the jurors. During a lunch break, four jurors were riding in an elevator along with a deputy sheriff and Adorno's attorney. The deputy, who was not a part of Adorno's trial, asked the jurors if they were coming from Judge Mallis' courtroom and described the case as a "bunch of trouble." The deputy also asked if that was "the drug case" and if it involved "the married couple." The jurors acknowledged it was a drug case, but said the couple's marital status had not been addressed. The defense attorney reported the incident and moved for a mistrial.

The judge called the deputy into the courtroom, questioned him regarding the content of the conversation, and chastised him for discussing an ongoing trial with jurors. The judge denied the motion for mistrial, but instructed the jurors that the deputy's statements were not evidence and that the jury was to disregard anything he said. Adorno did not renew his motion for mistrial after the judge gave the corrective instruction. By failing to do so, Adorno has failed to preserve the issue for appellate review. *Jones v. State*, 221 Ga. App. 374, 375 (2) (471 SE2d 318) (1996); *Kraus v. State*, 161 Ga. App. 739, 740 (1) (289 SE2d 555) (1982).

Even if Adorno had preserved this issue for appeal, reversal would not be required. It is well established that "where such an improper communication occurs, there is a presumption of harm and the burden is on the State to show the lack thereof. However, where the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant. In our opinion, such is the situation here." (Citations omitted.) *Jones v. State*, 258 Ga. 96-97 (366 SE2d 144) (1988); see also *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996).

Here, the trial court questioned both Adorno's attorney and the deputy before concluding that the improper communication was not "sufficiently prejudicial" to warrant a mistrial. Although Adorno contends that he was prejudiced by the suggestion that he was married to Rodriguez, the trial court noted that this suggestion had already been made during voir dire. Furthermore, in giving its curative instruction, the trial court minimized any harm caused by the deputy's comments by informing the jurors that the comments were not evidence. Under these circumstances, we agree that "the error was not so prejudicial as to have contributed to the conviction. We are satisfied that the [deputy's and] juror[s'] actions were harmless beyond a reasonable doubt." (Citation omitted.) *Sims*, supra at 420 (3).

3. Adorno argues that the trial court erred in denying his motion for severance. Adorno and Rodriguez were tried together on the cocaine trafficking charge. Prior to trial, Rodriguez made a statement to police in which she implicated Adorno. To prevent the statement from being used against Adorno, the State redacted the statement so that any reference to Adorno was changed to "another person," and the trial court admitted the statement.

In ruling on a motion for severance, the decision of the trial court will not be disturbed absent an abuse of discretion. *Baker v. State*, 238 Ga. 389, 391 (2) (233 SE2d 347) (1977). "The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process. In exercising its discretion, the court must consider three factors: (1) Whether a joint trial will create confusion of evidence and law; (2) whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and (3) whether the co-defendants will press antagonistic defenses." (Citations omitted.) *Dennard v. State*, 263 Ga. 453, 455 (5) (435 SE2d 26) (1993).

"This case involved only two defendants. The trial court instructed the jury to consider the guilt or innocence of each defendant separately, and the jury acquitted [Adorno's] co-defendant. Therefore, we find no danger that the number of defendants was so great as to cause confusion of the evidence and the law. Although a custodial statement [Rodriguez] made was introduced at trial, the trial court cautioned the jury to consider that statement only against [Rodriguez]." (Citations omitted.) *Skidmore v. State*, 226 Ga. App. 130 (1) (485 SE2d 540) (1997). Moreover, antagonistic defenses alone do not require severance. *Davis v. State*, 266 Ga. 801, 802 (3) (471 SE2d 191) (1996). Rather, Adorno must show harm. Id.

Adorno contends that severance was warranted, claiming he was harmed by the admission of Rodriguez's statement at their joint trial in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Pretermitting the question of whether Rodriguez's statement was inadmissible under *Bruton* (an issue which Adorno does not raise on appeal), the trial court did not abuse its discretion in refusing to sever the trial. The State did not base its case against Adorno upon Rodriguez's statement. To the contrary, the case against Adorno was based on the fact that the police caught him carrying well over 800 grams of cocaine. Accordingly, Adorno is unable to show harm by the introduction of Rodriguez's statement. See *Guimond v. State*, 259 Ga. 752, 755 (3) (386 SE2d 158) (1989); *Hanifa v. State*, 269 Ga. 797, 805 (4) (505 SE2d 731) (1998).

Even if the trial court erred in admitting Rodriguez's statement,

the error does not require reversal. See *Mathis v. State*, 231 Ga. 401, 403 (2) (202 SE2d 73) (1973). Where overwhelming evidence of a defendant's guilt exists apart from the statement of the co-defendant, then any violation of *Bruton* is harmless beyond a reasonable doubt. *Bell v. State*, 239 Ga. 146, 149 (1) (236 SE2d 47) (1977). Thus, the trial court did not abuse its discretion in refusing to sever the trial. See *Mathis*, supra.

4. Finally, Adorno contends the trial court erred in failing to charge the jury on the lesser included offense of possession of cocaine. "[A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990). The corollary to this rule is that "where the State's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense." *Howard v. State*, 220 Ga. App. 579, 582 (2) (469 SE2d 746) (1996).

In *Howard*, this Court held that simple possession of cocaine *is* a lesser included offense, as a matter of fact, in the greater offense of cocaine trafficking. Id. at 583. Thus, the trial court erred in failing to charge the jury on simple possession. In this case, however, it is highly unlikely that the error contributed to the verdict in view of the fact that Adorno was caught carrying 849.9 grams of cocaine, which clearly constitutes trafficking. Therefore, reversal is not required. See id.; *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994); *Cook v. State*, 226 Ga. App. 113, 115 (2) (485 SE2d 595) (1997).

*Judgment affirmed. Senior Appellate Judge Harold R. Banke concurs. Beasley, P. J., concurs in Divisions 1, 2, and 4 and in the judgment.*

DECIDED FEBRUARY 22, 1999.

*Taylor & Viers, Richard T. Taylor, Cruz & Associates, Daniel J. Castan*, for appellant.

*J. Tom Morgan, District Attorney, Keith A. Carnesale, Noah H. Pines, Assistant District Attorneys*, for appellee.